**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE FACTOR VIII OR IX | ) | MDL 986 |
| CONCENTRATE BLOOD PRODUCTS | ) | 93 C 7452 |
| LIABILITY LITIGATION | ) | |
| | ) | |
| | ) | This document relates to: |
| | ) | Chang, et al. v. Bayer Corp., et al., |
| | ) | 04 C 4869 |
| | ) | Peng, et al. v. Bayer Corp., et al., |
| | ) | 04 C 4868 |
| | ) | Ho, et al. v. Bayer Corp., et al., |
| | ) | 06 C 7012 |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**
*(Ruling on Taiwan Forum Non Conveniens Motion)*

This multidistrict litigation consists of claims against the
defendant pharmaceutical companies by citizens of various foreign
countries who suffer from hemophilia.  The plaintiffs allege that
they contracted the HIV and/or Hepatitis C (HCV) viruses from using
contaminated blood products manufactured by one or more of the
defendants.  The products were derived by the defendants from the
plasma of paid blood donors and processed by the defendants into
blood-clotting "factor concentrates" which could be infused by
hemophiliacs.  Plaintiffs allege that the viral contamination of
the concentrates resulted from a number of negligent acts and
omissions of the defendants in the collection and processing of the
blood plasma.  A further allegation is that after the defendants

discovered the contamination, they withdrew the defective concentrates from distribution in the United States but continued to distribute them in foreign countries for use by unsuspecting foreign citizens, causing them to contract the HIV and/or HCV viruses.

The defendants deny the allegations in the complaints and, in addition, are moving to dismiss each of the cases on the ground of *forum non conveniens*.  We have granted the defendants' motion in regard to the claims of citizens of the United Kingdom, <u>In re Factor VIII or IX Concentrate Blood Products Liability Litigation</u>, 408 F. Supp. 2d 569 (N.D. Ill. 2006), <u>aff'd</u>, <u>In re Factor VIII or IX Concentrate Blood Products Litigation</u>, 484 F.3d 951 (7th Cir. 2007); Argentina, <u>In Re Factor VIII or IX Concentrate Blood Products Litigation</u>**,** 531 F. Supp. 2d 957 (N.D. Ill. 2008) (presently on appeal); and Israel, <u>In Re Factor VIII or IX Concentrate Blood Products Liability Litigation</u>, 2008 WL 4866431 (N.D. Ill. June 4, 2008) (presently on appeal).

The history of the litigation is recounted in our United Kingdom decision, 408 F. Supp. 2d at 570-73.  The present opinion is addressed to the motion of two of the four multidistrict defendants, Bayer Corporation and Baxter Healthcare Corporation, to dismiss the three complaints brought against them by citizens of Taiwan on the ground of *forum non conveniens*.  The three complaints, involving a total of 37 individual plaintiffs, were

filed in the United States District Courts for the Northern and Central Districts of California and transferred here by the Judicial Panel on Multidistrict Litigation. (The other two pharmaceutical companies named in complaints brought by citizens of other countries are not named in the Taiwan complaints.)[1]

The three Taiwan complaints are substantially similar. The parties have tended to focus in their briefs on the <u>Chang</u> complaint as illustrative, and, for convenience, we will refer to these Taiwan claims as the <u>Chang</u> case.[2]

Another difference between <u>Chang</u> and the rest of the cases in the MDL is that <u>Chang</u> alleges not only the tortious conduct that resulted in plaintiffs' infections, but, in addition, a claim that the plaintiffs were fraudulently induced by defendants to enter into a "humanitarian agreement" (the "Humanitarian Agreement") that purported to release any claims they might have against the defendants in return for a payment of $60,000 to each plaintiff. The allegation is that although the defendants knew at the time of the agreement that plaintiffs' infections had been caused by the defendants' negligent manufacture of their products, they concealed that fact from the plaintiffs and from the Taiwan Ministry of

---

[1] Another difference is that these plaintiffs are not represented by the court-appointed lead counsel for the MDL plaintiffs, but instead are represented by separate counsel.

[2] We have used similar shorthand to refer to the other cases on which we have ruled: the United Kingdom case is <u>Gullone</u>; the Argentina case is <u>Abad</u>; and the Israel case is <u>Ashkenazi</u>.

Health, which participated in the negotiations leading to the agreement and recommended to the plaintiffs that they accept the settlement. The plaintiffs do not make a claim for rescission of the agreement, but seek, rather, to recover damages, including an additional payment based on a "scale-up" provision — a provision of the agreement that calls for plaintiffs to receive additional moneys that might be necessary to make their total payments equal to any that might be received by other persons who settled their claims with the defendants.[3] (The "First Generation" claimants in this MDL settled with defendants for $100,000 per person.)

The defendants deny any fraudulent inducement or concealment and plead the Humanitarian Agreement as a settlement that bars the plaintiffs' tort claims against them.

## THE LAW OF *FORUM NON CONVENIENS*

The defendants argue that the litigation of these claims in either of the California districts would be oppressively inconvenient for them for essentially the same reasons they have successfully moved to dismiss the other foreign claims. Taiwan, in their view, would be substantially more convenient for them and not substantially more inconvenient for the plaintiffs than California.

As we stated in <u>Abad</u>,

---

[3] The <u>Chang</u> complaint appears to assert a hybrid claim in regard to the Humanitarian Agreement, seeking to rescind it for fraud as far as their release of their tort claims is concerned but asking for specific performance of defendants' agreement to pay additional amounts of money to match payments made to other persons.

The steps involved in a *forum non conveniens* analysis are
well-settled. The first step is a two-part inquiry as to
whether the proposed alternative forum ... is <u>available</u>
and <u>adequate</u> for the litigation of plaintiffs' claims.
<u>Kamel v. Hill-Rom Co.</u>, 108 F.3d 799, 802-03 (7th Cir.
1997) ("An alternative forum is available if all parties
are amenable to process and are within the forum's
jurisdiction. An alternative forum is adequate when the
parties will not be deprived of all remedies or treated
unfairly."). If the alternative forum is both available
and adequate, "the district court must then balance the
private and public interest factors that emerge in a
given case." <u>Id.</u> (citations omitted).

531 F. Supp. 2d at 959-60.

## **AVAILABILITY**

The defendants agree as a condition of dismissal that they
will accept service of process in Taiwan and that they will not
challenge the Taiwanese court's jurisdiction. According to the
defendants' expert witness, Peter Tuen-Ho Yang, a Taiwanese law
professor, Taiwanese courts accept jurisdiction by consent (Yang
Decl. ¶ 40), and plaintiffs offer no contrary opinion. Defendants
also include in their motion to dismiss the additional stipulations
we have found sufficient to protect the plaintiffs in <u>Gullone</u>, <u>Abad</u>
and <u>Ashkenazi</u>. (Defs.' Mot. to Dismiss ¶ 2.)

Despite the statement of the Seventh Circuit in <u>Kamel</u>, 108
F.3d at 802, that "[a]n alternative forum is available if all
parties are amenable to process and are within the forum's
jurisdiction," the <u>Chang</u> plaintiffs begin their discussion with the
statement that "[i]n determining whether Taiwan is an available
forum, the issue is primarily whether the alternate forum affords

plaintiff an adequate remedy." (Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 11.) Adequacy is a separate question, and we will consider it separately. As for the initial question of availability, we find that Taiwan is an available forum for the litigation of plaintiffs' claims because all parties are amenable to process and are within the Taiwanese court's jurisdiction.

## ADEQUACY

A forum is "adequate" "when the parties will not be deprived of all remedies or treated unfairly," <u>Kamel</u>, 108 F.3d at 803. According to defendants' expert Professor Yang, all of the remedies sought by plaintiffs are available in the Taiwan courts. (Yang Decl. ¶¶ 41, 43-46.)

Plaintiffs' argument that the Taiwan forum is inadequate is based entirely upon their contention that their negligence and fraudulent inducement claims are probably barred by limitations in Taiwan. (Pls.' Mem. in Opp'n at 11-13.) As proof, they cite a case involving negligence and fraudulent inducement claims similar to theirs, the <u>Peng</u> case, which was dismissed by the Taiwan court on limitations grounds. (Pls.' Surreply at 9-11.)[4] (We have recently been informed by the defendants that the Taiwan Supreme Court has rejected the <u>Peng</u> appeal, so the result is final.)

---

[4] The brief was filed by plaintiffs on November 24, 2008 in response to the leave we granted them in our order of October 30, 2008 to file a "surreply" on the limitations issue. The brief bears the confusing title "Plaintiffs' Opposition to Defendants' Motion *Forum Non Conveniens*." In their response to the brief, defendants refer to it as Plaintiffs' Surreply, and we shall do the same.

Plaintiffs' point is that such a limitations bar would make Taiwan a forum where they would be "deprived of all remedies" within the meaning of the test for adequacy.  They seem to admit, however, that the Peng decision would not affect their contract claim for enforcement of the scale-up provision.

The defendants argue in their reply brief that the ability of plaintiffs to assert their contract claim is some remedy, and that is enough.  In their view, a time bar for some claims "does not mean that Taiwanese law provides no remedies, only that plaintiffs acted too late to take advantage of the remedies that it offers." (Defs.' Reply at 2.)  They provide no case authority for the argument.

In further reply, the defendants argue that the limitations rules in Taiwan and in California are the same.  The defendants conclude, therefore, that plaintiffs would suffer no disadvantage by having to litigate their claims in Taiwan as opposed to the federal district courts in California.  Putting it another way, whatever inadequacy there is in Taiwan is matched in California, so that the factor of "inadequacy" becomes neutral and is no basis for denying defendants' motion to dismiss.  Defendants rely on Younis v. American University in Cairo, 30 F. Supp. 2d 390 (S.D.N.Y. 1998) and our own decision in Abad, 531 F. Supp. 2d at 971-72. (Reply at 2-3.)

Defendants' assertion that the California courts would apply Taiwanese limitations law is based on a twofold argument. First, California choice-of-law rules use a "governmental interest" test to select the applicable statute of limitations, as explained in Orr v. Bank of America, 285 F.3d 764, 772 n.4 (9th Cir. 2002). (Defs' Reply at 3.) Defendants argue that Taiwan's interest in this litigation is, for various reasons, far greater than any interest the State of California may have; therefore, Taiwan limitations law applies. (Defs.' Reply at 3.)

The defendants' other rationale for applying Taiwan limitations law is California's "borrowing statute," which provides that when a cause of action has arisen in a foreign country, and the action is barred by limitations in that country, it is also barred in California. (Id.)

Alternatively, defendants argue that even if they were subject to the ordinary two-year California statute of limitations, plaintiffs' negligence claims would have been barred two years after they discovered they had been injured by defendants' concentrates. Defendants contend that the two-year period had expired years before plaintiffs filed these Chang suits in 2004. Thus, plaintiffs' claims are "time-barred under California's two-year statute of limitations just as clearly as under any Taiwanese statute." (Id. at 4.)

In their surreply brief, the plaintiffs provide authority for their contention that a limitations bar makes a forum inadequate. They cite <u>Bank of Credit & Commerce International (Overseas) v. State Bank of Pakistan</u>, 273 F.3d 241 (2d Cir. 2001). That case does hold that "an adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum." 273 F.3d at 246. Plaintiff sued in New York state court to collect on a loan it had made to the central bank of Pakistan. The defendant removed the case to the federal district court for the Southern District of New York, which granted the defendant's motion for dismissal on the ground of *forum non conveniens*. There is no indication in the opinion that there was any New York statute of limitations that caused any problem, and there is no mention of any borrowing statute. There was, however, a substantial question as to whether the action was barred by limitations in Pakistan. The Court of Appeals held that the district court had not made an adequate investigation as to whether the action would be time-barred in Pakistan. The case was reversed and remanded for reconsideration of the trial court's decision that Pakistan was an adequate alternative forum.

In holding that a limitations bar makes a forum inadequate, the Second Circuit cited <u>Mercier v. Sheraton Int'l, Inc.</u>, 935 F.2d 419, 426 (1st Cir. 1991) and <u>Kontoulas v. A.H. Robins Co.</u>, 745 F.2d 312, 316 (4th Cir. 1984). Those decisions do support the conclusion

reached by the Second Circuit.  In <u>Mercier</u>, the plaintiffs brought suit in the District of Massachusetts for an alleged breach of contract to operate a casino in one of the defendant's hotels in Turkey.  The district court granted the defendant's motion to dismiss for *forum non conveniens*, relying on the affidavit of defendants' expert, a Turkish law professor.  The Court of Appeals found the affidavit insufficient to establish that Turkey was an adequate alternative forum because, *inter alia*, the affidavit did not discuss the question of whether plaintiffs' action would be barred by limitations in Turkey.  935 F.2d at 425.  The plaintiffs had called to the attention of the Court of Appeals "authority apparently not provided to the district court suggesting that Turkey has a one-year statute of limitations that would bar the claims sought to be pursued in the present action."  <u>Id</u>.  The case was reversed and remanded for further consideration of the adequacy of the Turkish forum.  <u>Id</u>. at 430.

There is no indication in the <u>Mercier</u> opinion that there was any limitations problem in Massachusetts.  It was Turkey that presented the problem, with its unusual one-year limitations period.

<u>Kontoulas</u> was a series of product liability actions involving the intrauterine contraceptive device known as the Dalkon Shield. All of the cases were filed in the district of Maryland by non-residents of Maryland.  The multiple defendants moved to dismiss

the cases on the basis of *forum non conveniens*, arguing that the plaintiffs' home states or home countries were more convenient fora than the district of Maryland.  The district court denied the motion, and the Court of Appeals affirmed.  Discussing the motion of the defendant Robins, the Court noted that "Robins has not met its heavy burden of showing for <u>each</u> <u>individual</u> <u>action</u> that no statute of limitations in the plaintiff's home state renders that state ineligible to serve as an alternative forum."  745 F.2d at 316.  The opinion contains no indication that there was any limitations problem in the district of Maryland.

In their response to the plaintiffs' surreply, the defendants do not discuss these cases.  Neither side has cited a Seventh Circuit case on this question of whether a limitations bar makes a forum inadequate, nor have we found any Seventh Circuit authority.  However, we think these decisions from the First, Second and Fourth Circuits could well be followed by the Seventh Circuit when it does consider the matter, and we see no reason to think otherwise.  One possible distinction, of course, is that the possible limitations bars in the alternative fora involved in those cases were, as far as we can tell, complete bars of <u>all</u> of the plaintiffs' claims, not just some of them.  However, it is certainly relevant that the major claims of the <u>Chang</u> plaintiffs are their negligence claims, seeking compensation for the debilitating infections allegedly caused by the defendants' concentrates, and their fraudulent

inducement claims, seeking to set aside the settlement of their negligence claims. Their contract claims under the scale-up provision are puny in comparison to the negligence claims. We conclude, therefore, that the defendants have not carried their burden of showing that Taiwan is an adequate forum.

But this does not mean that the defendants' motion to dismiss must be denied. We return to the defendants' point that the result would be the same in Taiwan and in California as far as limitations is concerned. If that is true, we do not see why plaintiffs' limitations problem in Taiwan entitles them to litigate the identical question in California. If the rules are identical, it does not appear that the plaintiffs would suffer any greater detriment – at least as far as limitations is concerned – by proceeding in Taiwan instead of California.

Plaintiffs' position, however, is that the California courts will apply different limitations rules than obtain in Taiwan, so in their view, this entire discussion is beside the point. According to plaintiffs, Taiwan is inadequate, and California is adequate. We will proceed, therefore, to an analysis of what limitations law would be applied by the transferor district courts in California.

The federal courts in California sitting in these diversity cases would apply California's "governmental interest test" to determine what limitations law applies to the actions. <u>Orr</u>, 285 F.3d at 772 n.4. In <u>American Bank of Commerce v. Corondoni</u>, 169

Cal. App. 3d 368 (Cal. Ct. App. 1985), cited in <u>Orr</u>, the court

explained this test:

> The court first determines whether the "interest" or
> policy underlying the law will be significantly furthered
> by its application to the case at hand.   If both
> California and the foreign state have a strong interest
> in applying their own law, a true conflict exists.   The
> court then engages in a "comparative impairment"
> analysis, and applies the law of the state whose interest
> would be the more impaired if its law were not applied.
> Nevertheless, California's general preference is to
> apply its own law.   If the interests of the foreign state
> will not be significantly furthered by applying its law,
> the California court must conclude that the conflict is
> "false" and apply California law.
>  A "false" conflict between two statutes of limitation
> occurred in <u>Ashland Chemical Co. v. Provence</u> (1982) 129
> Cal. App. 3d 790 [181 Cal.Rptr. 340].   There, the parties
> disagreed over whether California's or Kentucky's statute
> applied to a guaranty contract.   The court noted that the
> purpose of such statutes is to protect the enacting
> state's residents and courts from the assertion of stale
> claims.   It concluded that this policy would not be
> advanced if it were to enforce Kentucky's longer
> limitations period: "<u>Here California courts and a
> California resident would be protected by applying
> California's statute of limitations because California is
> the forum and the defendant is a California resident.
> Applying California's statute of limitations would thus
> advance its underlying policy .... In contrast, Kentucky
> has no interest in having its statute of limitations
> applied because here there are no Kentucky defendants and
> Kentucky is not the forum.</u>" (<u>Id.</u>, at p. 794.)   The court
> then applied California's statute.

169 Cal. App. 3d at 372-73 (emphasis added) (citations and

quotations marks omitted).   The foregoing quotation endorsing the

analysis of <u>Ashland Chemical</u> indicates that the <u>Chang</u> plaintiffs

and the defendants Baxter and Bayer misapprehend the nature of

California's governmental interest test.   They see it as a test of

which forum has the greater interest in the underlying subject

matter of the action. (Defs.' Resp. to Pls.' Surreply at 5-6; Pls.' Surreply at 15-17.) But where the question is what <u>limitations</u> law to apply, it is the forum's interest in the application of its <u>limitations</u> law that is the focus of the test.[5]

Taiwan has an interest in what limitations periods apply to the claims of its citizens, and the <u>Chang</u> plaintiffs are Taiwanese citizens. Whatever interest California may have in what limitations periods apply to plaintiffs' claims, we think it is a lesser interest than that of Taiwan because neither the plaintiffs nor the defendants are citizens of California. We conclude, therefore, that under the governmental interest test, the California courts would apply the limitations law of Taiwan to the these claims.

All of this presupposes that there is a difference between the limitations period that would apply to plaintiffs' claims under Taiwanese law and that which would apply under California law. Whether that is true or not is a question that requires discussion. Plaintiffs have attached to their surreply as Exhibit 1 a purported English translation of the decision of the Taiwanese High Court affirming the District Court's dismissal of the <u>Peng</u> case, brought on behalf of other HIV-infected users of defendants' concentrates. The negligence claims were dismissed as barred by

---

[5]     Comparative governmental interest in the subject matter of the case is a public interest factor entitled to consideration in its own right, of course, and we do that <u>infra</u> at 32-34.

Taiwan's two-year statute of limitations. (Pls.' Surreply, Ex. 1, at 11.) The High Court pointed out that "the fact of tortious act claimed by the appellants ended in 1985, to say the latest, and the appellants did not prove any fact of tortious act after 1985 ...; yet the appellants did not file for any litigation until May 20, 2004, i.e., 19 years later, it is obvious that the above mentioned statute of limitation for the claim passed already ...." (<u>Id.</u> at 9.) The High Court also held that the plaintiffs' claims for fraud in connection with the Humanitarian Agreement were governed by Taiwan's six-month statute of limitations. (<u>Id</u>. at 12-13.) As we noted earlier, the Taiwan Supreme Court has recently rejected the <u>Peng</u> plaintiffs' appeal from the High Court decision.

The <u>Chang</u> plaintiffs admit in their surreply brief that <u>Peng</u> is "factually similar to the present case" and that "[t]hese Taiwan court decisions [in the <u>Peng</u> case] are consistent with the defendants' assertion that the plaintiffs' claims herein would also be time barred in Taiwan." (Pls.' Surreply at 10.) However, plaintiffs argue that their claims are not time-barred in California because there, unlike Taiwan, the claims are saved by California's "discovery rule." But plaintiffs have two problems here. First, as we have just indicated, we believe the California courts would apply Taiwanese limitations law rather than California limitations law. But secondly, assuming California law with its discovery rule were to be applied to plaintiffs' claims, it is

clear that they discovered their claims at least as early as the late 1990s when they began negotiations with the defendants that resulted in the 1998 settlement agreement. The <u>Chang</u> suits were not filed until 2004.

What amounts to "discovery" is explained in <u>Norgart v. Upjohn Co.</u>, 981 P.2d 79 (Cal. 1999):

> [T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least "suspects ... that someone has done something wrong" to him (<u>Jolly v. Eli Lilly & Co.</u>, supra, 44 Cal.3d at p. 1110), "wrong" being used, not in any technical sense, but rather in accordance with its "lay understanding" (id. at p. 1110, fn. 7). He has reason to discover the cause of action when he has reason at least to suspect a factual basis for its elements. (<u>Jolly v. Eli Lilly & Co.</u>, supra, 44 Cal.3d at p. 1110.) He has reason to suspect when he has "'"notice or information of circumstances to put a reasonable person *on inquiry*' "'" (<u>id.</u> at pp. 1110-1111, italics in original); he need not know the "specific 'facts' necessary to establish" the cause of action; rather, he may seek to learn such facts through the "process contemplated by pretrial discovery"; but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place—he "cannot wait for" them "to find" him and "sit on" his "rights"; he "must go find" them himself if he can and "file suit" if he does (<u>id.</u> at p. 1111).

981 P.2d at 88-89 (parallel citations omitted).

The defendants' final point on limitations is that if California law were applied, the California "borrowing statute" would bar plaintiffs' claims. The statute reads as follows:

> When a cause of action has arisen in another State, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by

reason of the lapse of time, an action thereon shall not
be maintained against him in this State.

Cal. Civ. Proc. Code § 361.  Defendants argue that plaintiffs'

cause of action "arose" in Taiwan so that the borrowing statute

applies.  Plaintiffs, on the other hand, argue that their action

arose when the defendants committed their tortious acts in

California so that the borrowing statute does not apply. (Pls.'

Surreply at 19-20.)

The borrowing statute uses the word "arises," which we believe

is synonymous with "accrues," a word generally used in statutes of

limitation.  In Norgart, the Court stated:

> Under the statute of limitations, a plaintiff must bring
> a cause of action within the limitations period
> applicable thereto after accrual of the cause of action.
> The general rule for defining the accrual of a cause of
> action sets the date as the time when, under the
> substantive law, the wrongful act is done, or the
> wrongful result occurs, and the consequent liability
> arises.  In other words, it sets the date as the time
> when the cause of action is complete with all of its
> elements.

981 P.2d at 88 (citations and quotation marks omitted).  See also

United States Liability Ins. Co. v. Haidinger-Hayes, Inc., 463 P.2d

770 (Cal. 1970):

> Harm is an essential element to negligence actions. Mere
> threat of future harm, not yet realized, is not enough.
> (Prosser on Torts (3d) 147.)  The cause of action must be
> matured so that a suit can be based upon it.  No action
> will lie to recover damages if no damages have been
> sustained.  Basic public policy is best served by
> recognizing that damage is necessary to mature such a
> cause of action.

463 P.2d at 776 (citations omitted). The Haidinger-Hayes opinion cites the third edition of Prosser on Torts at 147. We will quote from the fifth edition of that treatise, which we assume is essentially the same discussion cited by the California Supreme Court in Haidinger-Hayes:

> Negligence, as we shall see, is simply one kind of conduct. But a cause of action founded upon negligence, from which liability will follow, requires more than conduct. The traditional formula for the elements necessary to such a cause of action may be stated briefly as follows:
>
> . . .
>
> 3. A reasonably close causal connection between the conduct and the resulting injury. This is what is commonly known as "legal cause," or "proximate cause," and which includes the notion of cause in fact.
>
> 4. Actual loss or damage resulting to the interests of another. Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough. Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered.
>
> It follows that the statute of limitations is generally held not to begin to run against a negligence action until some damage has occurred.

W. Page Keeton et al., Prosser & Keeton on Torts § 30 (5th ed. 1984) (footnote omitted).

The plaintiffs' negligence actions arose in Taiwan because that is where all of their infections occurred. No cause of action for negligence accrued, or arose, prior to the infections. The California borrowing statute therefore applies, and if plaintiffs' actions are time-barred in Taiwan, they are necessarily time-barred in California as well.[6]

The plaintiffs argue that their fraudulent inducement claim arose in California because some of their negligent conduct occurred in California and that conduct is what was concealed from the plaintiffs and the Ministry of Health officials during the negotiations in Taiwan. The argument fails, however, because no cause of action accrued before the alleged misrepresentations were made, and they were made in Taiwan, not California. It is not the conduct concealed, but the concealment that is the gist of the action.

We return to the question of whether it would make a difference to the success of plaintiffs' claims if they were to remain on file in California as opposed to being refiled in Taiwan. We do not see that it would.[7] It appears that the chances of

---

[6] In the event the California courts should apply the governmental interest test to reach a different result than we did and find that California rather than Taiwanese limitations law applies to the case, it should be noted that California limitations law would include the California borrowing statute.

[7] We are not, of course, holding that the plaintiffs' claims are time-barred either in Taiwan or in California. What we are addressing is the adequacy of Taiwan as a forum for plaintiffs' claims. Our best judgment as to what might be the outcome concerning limitations is a necessary part of the analysis.

plaintiffs' claims being dismissed as time-barred are equal in Taiwan and California.  In other words, Taiwan and California are on a par as far as adequacy – or inadequacy — is concerned.

## **PRIVATE INTEREST FACTORS**

### **Inability to Join Third-Party Defendants**

The patient profile forms provided to defendants by the plaintiffs indicate that most of them have used various therapies for the treatment of their hemophilia besides the infusion of the defendants' factor concentrates.  This suggests to the defendants that these other therapies, such as whole blood plasma and cryoprecipitate provided by other suppliers in Taiwan, may have been the source of plaintiffs' HIV and HCV infections.  The plaintiffs would like to have the opportunity of filing third-party actions against these other entities, and that cannot be done in the United States because those entities are not subject to the jurisdiction of the United States courts.  In addition, the defendants argue that in order to investigate the likelihood of successful third-party claims in Taiwan, they need litigation pending in Taiwan to serve as a vehicle.

This private interest factor was one we found persuasive in the Gullone, Abad and Ashkenazi cases.  But in those cases, it was clear that if defendants were sued in the United Kingdom, Argentina or Israel, the procedure in those countries would permit the filing of third-party actions.  The parties disagree as to whether this is

true of Taiwan.  Defendants' expert witness, Professor Yang, states

in his sworn declaration that if the Chang plaintiffs filed suit

against the defendants in Taiwan, "defendants could, if

appropriate, add as participants other local or foreign entities

who may be responsible for plaintiffs' alleged injuries."  (Yang

Decl. ¶ 47.)   He cites no authority for his statement.   The

defendants point out:

> If these cases remain in the United States, Defendants
> will be unable to implead the Taiwanese blood banks that
> supplied the whole blood, plasma, and cryoprecipitate to
> these Plaintiffs, and they will be unable to implead any
> foreign factor concentrate processors.  Defendants will
> also be unable to implead the doctors, hospitals, and
> other health care providers in Taiwan who administered
> factor concentrates to the Taiwan Plaintiffs.

(Defs.' Mem. in Supp. of Mot. to Dismiss at 10.)

Defendants go on to argue, citing Professor Yang's Declaration

at ¶ 47, that if the plaintiffs were to refile in Taiwan, on the

other hand, "they could sue these blood banks, health care

providers, and foreign factor concentrate processors in the first

instance.  If they for some reason did not, Defendants could join

these third parties in the litigation.  (Id.)  Since defendants are

discussing their inability to "implead" other parties if the cases

remain in the United States, it sounds like that when they say

"defendants could join these third parties in the litigation," they

really mean that they could implead them in the manner that parties

are joined in third-party complaints in the United States.  But the

argument is misleading.  Looking back at what Professor Yang says,

it is that "defendants could, if appropriate, add as <u>participants</u>
other local or foreign entities who may be responsible for
plaintiffs' alleged injuries." (Yang Decl. ¶ 47 (emphasis added).)
When his deposition was taken by plaintiffs, Yang stated that
Article 65 of the Taiwan Code of Civil Procedure is what he had in
mind. This Article reads as follows:

> While an action is pending, a party may notify a third
> party whose legal interests will be adversely affected if
> such party is defeated. The notified third person may
> make further notification to another person.

(Yang Dep. at 98-99; Taiwan Code of Civil Procedure, art. 65, Ex.
5 to Defs.' Reply at 11.) Asked whether Article 65 "actually
call[s] upon the third party to provide compensation," the witness
initially answered, "It's possible," and, then when asked whether
"it actually say[s] that," he answered, "Yes." (Yang Dep. at 100.)
Clearly, it does not actually say that.

We digress a moment to discuss the qualifications of Professor
Yang. He received an L.L.B. in 1964 and an L.L.M. degree in 1967
from National Chung Hsin University in Taipei, Taiwan. He studied
law at the University of California at Berkeley and received an
L.L.M. in 1976 and an S.J.D. in 1979. He served as Dean of the
college of law at Fujen Catholic University in Taipei from 1991 to
1996 and was a member of the law school faculty at that university
from 1967 to 2002. He was the president of that university from
1996 to 2000. Since 2002, he has been the president of St. John's
University in Taipei. (Yang Decl. ¶¶ 2-3.) He has never been

involved in a product liability case.  As far as we can tell, he has never practiced law. He has taught civil procedure classes in law school.  (Yang Dep. at 26-27.)

Professor Yang's carefully worded declaration, where he talks about "participation" of third parties in a lawsuit, and his equivocation in his deposition when asked about Article 65 gives us pause as to whether he can be relied upon for the proposition that third-party practice as we know it in the United States is available in Taiwan.  Certainly Professor Yang has never had any personal experience in third-party litigation, or, for that matter, in other any kind of litigation.

The plaintiffs' expert witness is Professor Kuo-Chang Huang, another Taiwanese academic with no litigation experience.  He received his L.L.B. from National Taiwan University in 1995, then received an L.L.M. degree in 1999 and a J.S.D. degree in 2002 from Cornell University Law School.  He worked for the Taiwan International Patent Law Office from January 1997 until June 1998. After graduating from Cornell University, he began teaching as an assistant professor of law.  His present position is adjunct associate professor of law at National Taipei University.  (Huang Aff. ¶¶ 1-2.)  He has written books and articles on civil procedure and has an impressive list of publications.  (Id. ¶ 3.)

In his affidavit, Professor Huang disputes the assertion of Professor Yang that Article 65 of the Taiwan Civil Code of

Procedure permits a defendant to file a third-party action seeking

indemnity from a third party:

> 9. <u>Impleader in the Context of Taiwan's Legal</u>
> <u>System</u>: Dr. Yang asserts, "defendants could, if
> appropriate, add as participants other local or foreign
> entities who might be responsible for plaintiffs' alleged
> injuries". *See Yang Declaration ¶47*. In fact, however,
> there is no such device as impleader provided in the FRCP
> 14 in Taiwan Code of Civil Procedure (hereinafter TCCP).
> To put it more explicitly, a defendant in Taiwan has no
> means to implead a third party who should bear the final
> responsibility for the plaintiff's claim against the
> defendant. While Articles 58 and 65 under TCCP provide
> the devices of Litigation Intervention and Litigation
> Notification, respectively, neither of these two devices
> performs the function of impleader. Nor do they allow
> the defendants to assert their claims against any
> responsible third party in the same proceeding. Yang's
> assertion that defendants may join third parties to the
> litigation is simply wrong. Yang's citation of Articles
> 58 and 65 during his deposition is also misinterpretation
> of the functions of Litigation Intervention and
> Litigation Notification. *See Yang Depo pp. 98-100.* I
> may add that I have advocated in my published articles
> that Taiwan should adopt the device of impleader.
> However, no such device has been provided for in TCCP.

(Huang Aff. ¶ 9.) In his deposition, Professor Huang gave an

articulate explanation of Article 65 and related articles of the

Code, demonstrating that, contrary to defendants' argument, there

is no impleader in Taiwan. (Huang Dep. at 97-108.) The procedure

allows a defendant to "notify" a third party who might be liable to

him should the defendant lose to the plaintiff. A notified party

then becomes an "intervenor," who, whether he elects to participate

in the proceeding or not, cannot dispute any findings vis-à-vis the

plaintiff and the defendant (e.g., the amount of damages for which

the defendant is liable to the plaintiff) in any later proceeding

brought against the notified party.  A notified party is entitled to "participate" in the proceeding between the plaintiff and the defendant and presumably may offer evidence and arguments designed to prevent or minimize any findings against the defendant that may later serve as a basis for an action against the third-party intervenor.  Nowhere in the Code is there any provision that would permit the defendant to assert a claim against the intervenor in the initial proceeding between plaintiff and defendant.

The defendants have made no effort to explain why they would benefit from notifying possible third-party intervenors in Taiwan. Should defendants be found liable to plaintiffs, they would remain liable to plaintiffs regardless of whether they might be successful in the laborious process of seeking indemnity against third parties in separate lawsuits.  That those third parties might have been "notified" by defendants, and be bound by findings entered by the Taiwan court as between plaintiffs and the defendants, would do nothing to establish any liability of the third parties to the defendants.

We find, therefore, that the private interest factor of inability to join third-party defendants is inapplicable to this case.  There is no third-party practice in Taiwan.

### Relative Ease of Access to Sources of Proof and Compulsory Process for Witnesses

If the defendants could demonstrate that they are significantly limited in the discovery they can obtain in Taiwan in

aid of cases pending in the United States, and that their ability to obtain necessary discovery would be substantially greater if it were sought in connection with a case pending in Taiwan, that would be a private interest factor in favor of dismissal. The defendants say that this is precisely the case. The plaintiffs argue the defendants can obtain all the discovery they need in Taiwan even if the litigation remains in California.

The parties differ as to whether the plaintiffs have provided all of the medical information and medical records requested by the defendants. Defendants use the alleged deficiencies in the plaintiffs' production as an indication of the need to move the cases to Taiwan, where the Taiwanese courts can ensure that defendants receive the information they require. We have examined the parties' contentions about the medical records and patient profile forms and find that the deficiencies are relatively minor. Moreover, they are of a nature that could be remedied without moving the cases to Taiwan.

The situation is otherwise, however, with regard to persons having knowledge of the plaintiffs' medical conditions, namely, the plaintiffs' treating physicians, family members[8] and other persons having knowledge of the plaintiffs' physical limitations, such as employers. The depositions of a reasonable number of these persons

---

[8]/ The testimony of family members might be important to establish the dates of infection for plaintiffs who were infected with HIV or HCV as minors.

would need to be taken in advance of any trial, and we think it would be much easier to take the depositions in connection with litigation filed in Taiwan than it would be to take depositions in Taiwan in aid of cases pending in California. Defendants' expert, Professor Yang, stated in his declaration that Taiwan is not a signatory to the Hague Convention and that a Taiwanese court will rarely compel parties to produce documents or give testimony in support of foreign judicial proceedings. It can only be done in front of a judge, with all of the questioning conducted by the judge or Taiwanese counsel. (Yang Decl. ¶ 35.) Yang offers no basis for his opinion, and when the plaintiffs took his deposition, they did not ask him about this issue.

Plaintiffs expert, Professor Huang, expresses a different view. He is confident that a court in Taiwan would provide evidence for use in a foreign proceeding to the same extent that the foreign court would do the same thing in aid of a Taiwanese proceeding. A foreign court could draft a letter of request (apparently offering to return the favor) and submit it to the Taiwanese court. (Huang Aff. ¶¶ 15-16.) The witness gives no indication in his declaration that he has had any actual experience in this area of the law or that he even knows of any case where this kind of thing has occurred. When the defendants took Professor Huang's deposition, they did not inquire about this subject.

We are satisfied that the taking of a substantial number of depositions in Taiwan in connection with cases pending in California would be a difficult and cumbersome process, at best. If Professor Huang has any actual knowledge of how it would work, it does not appear from his declaration. It would require some kind of reciprocal commitment on the part of a United States court, but what that would be is completely unclear. The defendants obviously have in mind a considerable number of depositions they would like to take (treating physicians, family members, the plaintiffs themselves, as well as other persons having knowledge of plaintiffs' damages), so the reciprocal undertaking of a United States court would apparently be no small matter. Plaintiffs have not explained how that commitment would be obtained, and we are unwilling to speculate about it.

If the cases were pending in Taiwan, pretrial depositions would not be taken as easily as they are in the United States, but the process would be less complicated than the procedure described by the experts for depositions that might be attempted in aid of cases pending in the United States.

The plaintiffs argue that it really is not necessary to depose anyone in Taiwan because all the material witnesses would be willing to come to California to have their depositions taken. Neither side has presented any evidence from which we could conclude that witnesses either are or are not willing to come to

the United States to be deposed.  But we think the defendants are correct in assuming that Taiwanese treating physicians, for instance, would likely decline an invitation to appear.  Similarly, there are employees of the government of Taiwan who would have important information concerning what representations were made by the defendants during the negotiations that led to the Humanitarian Agreement.  If plaintiffs should prevail on their fraudulent inducement claim, the settlement could be set aside and plaintiffs would be free to pursue their tort claims (unless, of course, they are time-barred).  On the other hand, if the settlements were not obtained by fraud, that could be the end of the case, with the exception of the scale-up claims.  As the defendants put it, "[i]f Plaintiffs are bound by their previous settlements, there will not be any tort claims to pursue." (Defs.' Mem. at 3.)  According to the Chang complaint, "Taiwan's Department of Health believed that the settlement was appropriate, fair and reasonable, based upon Bayer's representations.... Had Taiwan government officials, in particular, members of the Ministry of Health, known the facts alleged herein, they would not have recommended the 'Humanitarian Payment' agreement to Taiwan's hemophiliacs and their families." (Compl. ¶ 160.)  We are not informed as to how many members of the Ministry of Health may have been involved in the negotiations with defendants and the internal discussions which led to the decision

to recommend the settlement. There could be quite a few, and we think it unlikely that they would come to California to be deposed.

Plaintiffs' discovery in this case has been fairly simple compared with what the defendants need to do. The plaintiffs' discovery concerns the alleged liability of the defendants, and it has all been done in the MDL, in large part by counsel other than counsel representing the Taiwanese plaintiffs. The wealth of materials accumulated during the years of MDL discovery is available to plaintiffs for the taking. The defendants, on the other hand, are interested in discovery concerning causation and damages. The witnesses having knowledge of these matters are, for the most part, residents of Taiwan. Our conclusion is that Taiwan is the place that offers relative ease of access to sources of proof and compulsory process for witnesses, as far as the discovery needs of the defendants are concerned. That the plaintiffs' discovery needs have been satisfied in the United States is immaterial to this private interest factor, which clearly weighs in favor of dismissal.

### Other Practical Problems

The practical problem that arises if the Chang cases should be refiled in Taiwan is the cost of translation. We find it surprising that all documentary evidence would have to be translated into Chinese if the case were tried in Taiwan, even if the judge were English-speaking. But both of the parties' experts,

Professors Yang and Huang, stated in their depositions that translation into Chinese would be mandatory. (Yang Dep. at 35; Huang Dep. at 152.)

We turn, then, to the question of whether the plaintiffs' cost of translating their English-language evidence into Chinese would substantially exceed the cost that defendants will have to bear in California if they translate evidence favorable to them from Chinese into English for the benefit of a California court.

To say that plaintiffs paint a gloomy picture would be something of an understatement. They estimate that 83,600 pages would have to be translated from English into Chinese for a trial in Taiwan. Their translator estimates that "it would take one translator 25 years (or 25 translators one year) at a cost of over 4 million dollars to translate this evidence into Chinese." (Plfs.' Mem. in Opp'n at 20.) Defendants assure us, on the other hand, that "if these cases are litigated in Taiwan, the volume of documents that must be translated would be very limited.... Plaintiffs' counsel, who possesses an organized database of discovery documents, can easily identify the relatively small number of documents actually important to the Taiwan Plaintiffs' cases that would need to be translated." (Defs.' Mem. at 13.)

We think the cost of translation for plaintiffs would be substantial and far in excess of any translation costs the defendants would have to bear if the cases remain in California.

Should the cases be tried, it is plaintiffs, after all, who have the burden of proving their medical claims. This would require them to bear the major cost of translating the relevant medical evidence from Chinese into English for use in the California courts. They would also have to bear at least a portion of the translation cost for their trial testimony. But we believe plaintiffs' total translation costs in California would still be far less than the cost of translating their English-language liability evidence from the MDL into Chinese for use in Taiwan.[9]

We find the cost of translation to be a private interest factor weighing against dismissal.

## PUBLIC INTEREST FACTORS

## The Local Interest in Having this Controversy Decided in Taiwan

The defendants argue that Taiwan's interest in deciding the controversy is far greater than the interest of California. They cite the fact that plaintiffs' medical care is being provided in Taiwan, to a large extent at public expense, and that the problems

---

[9] Plaintiffs apparently have given no thought to the possibility that the need for translation could be greatly reduced. For instance, surely it would not be necessary to translate the full text of every document. Often only a portion of a document is relevant. In fact, in modern trials it is customary to highlight the relevant portions for the jury, enabling them to ignore the parts that are irrelevant. Not every page of a deposition would have to be translated. The MDL depositions were not taken for evidence, but for discovery, and the portions valuable as evidence are often only a small fraction of the total transcript. As for the defendants' business records, such as the "40,000 pages of AHF lot records for product shipped to Taiwan" (Pls.' Mem. in Opp'n at 20), it should not be necessary to translate all of the English language contained on 40,000 pages. Instead, it should be possible to prepare charts showing the relevant numbers, as is often done in this country pursuant to Federal Rule of Evidence 1006. In short, plaintiffs make the situation out to be much worse than it really has to be, but notwithstanding the exaggeration, their translation costs in Taiwan would be formidable.

concerning the plaintiffs' HIV and HCV infections will endure long into the future. Moreover, defendants argue that Taiwan would have an interest in finding out whether, as plaintiffs allege, its Ministry of Health relied on misrepresentations by defendants in recommending that the plaintiffs settle their claims. These considerations are akin to what the Court of Appeals found to be a significant governmental interest of the United Kingdom in the Gullone case. See In re Factor VIII, 484 F.3d at 959.

Plaintiffs argue that California has the greater interest in the controversy because the defendants committed many of their tortious acts there. We think Taiwan has the greater interest. For one thing, its interest is current. The plaintiffs' medical care, the cost of it, and all of the problems associated with these viral infections will be a continuing concern of the Taiwanese government. The possibility that its Ministry of Health was misled in the manner alleged is of obvious concern.

If the defendants are guilty of the negligent acts allegedly committed in California, the acts were committed many years ago. There is no indication that the defendants are presently engaged in any negligent or otherwise tortious conduct that should concern the citizens of California. Litigation of these claims of alleged past misconduct might arguably have some deterrent value for the future, but that prospect does not give California an interest in this

litigation that equals that of Taiwan.  We find, therefore, that this public interest factor favors dismissal.

### Avoiding Unnecessary Problems in Conflicts of Law or Application of Foreign Law

The defendants argue that the transferor courts in California would, upon remand of these cases, have to grapple with complicated problems of California conflicts law and Taiwanese substantive law. This could be avoided if the cases were simply dismissed and refiled in Taiwan.  (Defs.' Mem. at 17-19.)

We are unpersuaded.  The defendants' argument is couched in general terms, with no specific reference to any particularly difficult legal problem or, for that matter, any legal problem at all.  Conflicts of law issues are a staple for federal district judges, and, as far as the Taiwanese substantive law is concerned, it appears from the declarations of Professors Yang and Huang that the law of negligence, fraud and contracts in Taiwan is substantially similar to the law in the United States.

This factor does not apply in this case.

### Expeditious Resolution of Litigation

The defendants suggest that the median time for filing to disposition in the Central and Northern Districts of California is about two years, whereas, according to Professor Yang, if the plaintiffs "were to re-file their cases in Taiwan and pursue their cases diligently, they could receive a final judgment from the

trial court and the Court of Appeals within one year." (Defs.' Mem. at 19.)

At this juncture, it is clear that if these cases were to be tried there is much discovery that must be done by the defendants, mostly in Taiwan.  <u>See</u> <u>supra</u> at 28-30.  We doubt that all of that discovery could be completed in one year and perhaps not even in two years, whether the cases are pending in California or Taiwan. Once the discovery is done, the 37 <u>Chang</u> claims certainly could not be handled in one trial.  Perhaps more than one claim could be joined in a single trial, but in no event could a multiplicity of separate trials be avoided.  How long it would take in either forum to complete the trials of these 37 claims is a question as to which "filing to disposition" statistics are almost totally irrelevant. Common experience tells us that jury trials in California would take much longer than bench trials anywhere, including Taiwan, but any attempt to assess how long it might take in either California or Taiwan to complete <u>trials</u> (and probably appeals as well) would be nothing but speculation.

We can only conclude that this public interest factor is neutral.

### **Burdening Citizens in an Unrelated Forum with Jury Duty**

Defendants contend that it would be inappropriate to impose upon the citizens of California the duty of sitting for multiple-week trials of these cases that involve no particular interest of

California and require translation of much of the evidence from Chinese into English. It would be more appropriate, say the defendants, to refile the cases in Taiwan, where they would be heard expeditiously by judges, without juries.

This argument depends upon the dubious assumption that these claims actually will be tried somewhere, either in California or Taiwan. As we discussed in <u>Abad</u>, 531 F. Supp. 2d at 980-81, involving the Argentine plaintiffs, there are many events that could intervene, wherever the cases are pending – settlement, for instance – that would render trials unnecessary. The prospect that any juror will have to sit on one of these cases is so uncertain that we regard this factor as neutral.

## **STRIKING THE BALANCE**

In favor of granting the defendants' motion to dismiss, then, we have the private interest factor of the relative ease of access to sources of proof and compulsory process for witnesses and the public interest factor of Taiwan's interest in having the controversy decided in Taiwan.

Weighing against dismissal is only the private interest factor of plaintiffs' cost of translation from English to Chinese if the cases were refiled in Taiwan.

We believe the two factors favoring dismissal substantially outweigh the disadvantage to plaintiffs in having to incur the increased cost of translation, especially since, as we indicated

<u>supra</u> at 32 n.9, some portion of the increased cost can be mitigated.

Therefore, were it not for a practical consideration we will discuss in the next section of this opinion, we would grant the motion to dismiss.

## A Final Practical Consideration

If we were to grant the motion to dismiss, and the cases were to be refiled in Taiwan, what is the first thing that would happen? The answer is clear. The defendants would move to dismiss on the basis of limitations, citing the <u>Peng</u> case. The Taiwanese court would rule on the motion before there was any need for defendants to do the discovery that can be done more easily in Taiwan than in California.

The plaintiffs have virtually conceded that their negligence and fraud claims are time-barred in Taiwan. They rely on their view that their claims would survive under California limitations law. But, as we have seen, the California courts, under the governmental interest approach, will apply the same Taiwanese limitations law that the Taiwanese court would apply. The result, whatever it is, should be the same in California as it would be in Taiwan.

We believe it would be pointless, and that it would impose a needless expense upon the plaintiffs, for us to grant the motion to

dismiss, forcing them to refile in Taiwan.[10]   The cases should
remain in California, where defendants can present the same motion
they would present in Taiwan.   Should the California courts, or
either of them, decide that the claims are not time-barred, the
California court could then consider whether a *forum non conveniens*
dismissal would be appropriate.   Our denial of defendants' motion
at this time is, of course, without prejudice to their renewing it
in California should it become appropriate to do so.

## CONCLUSION

The motion of the defendants to dismiss the plaintiffs from
Taiwan on grounds of *forum non conveniens* is denied.

It appears that a suggestion to the Judicial Panel on
Multidistrict Litigation Panel that these cases be remanded to the
transferor courts in California would now be appropriate.   If
either side has an objection to such a suggestion, the objection
should be submitted by January 23, 2009.

---

[10]/   Here, the defendants' point about the difficulty of trying to apply
unfamiliar foreign law, <u>supra</u> at 34, cuts against them.   The threshold legal
question in this case is whether plaintiffs' claims are time-barred under the
limitations law of California.   It can hardly be doubted that the federal
district courts in California are more familiar with California limitations law
than would be the courts of Taiwan.

DATED:        January 14, 2009

ENTER:

_____
United States District Judge